UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAREN E. RUSHING, as Clerk of the Circuit
Court and County Comptroller of Sarasota
County, Florida,

    Plaintiff,

v.    Case No. 8:10-cv-1572-T-24-AEP

WELLS FARGO BANK, N.A., as successor-
in-interest to Wachovia Bank, N.A.,

    Defendant.
_____/

## **ORDER**

This cause comes before the Court on Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Counts I, II, III, and V of the Complaint. (Doc. No. 12). Plaintiff opposes this Motion. (Doc. No. 14). After careful consideration of the allegations of the Complaint (Doc. No. 2), the Court concludes that the motion should be granted as to Counts I and V, and denied as to Counts II and III.

**I.    Background**

Karen E. Rushing, as Clerk of the Circuit Court and County Comptroller (the "Clerk") of Sarasota County, Florida (the "County"), brings this action for violations of the Florida Securities Investor Protection Act ("FSIPA") (Count I), negligence (Count II), breach of fiduciary duty (Count III), breach of contract (Count IV), and unjust enrichment (Count V) in connection with losses resulting from investments purchased by Wachovia for the County. The County sues Wells Fargo Bank, N.A., as successor-in-interest to Wachovia Bank, N.A. ("Wachovia").

The County alleges the following in its Complaint: Wachovia serves as the County's agent for purposes of lending the County's securities to third-party borrowers. The cash collateral received from any borrower is then reinvested by Wachovia for the County. The relationship between Wachovia and the County is governed by the Securities Lending Agency Agreement (the "Agreement") (Doc. No. 2, Ex. C) and an addendum to the Agreement—the Securities Lending Investment Guidelines (the "Wachovia Guidelines") (Doc. No. 2, Ex. D).

To engage in securities lending, the County was required to amend its investment policy guidelines (the "Revised County Guidelines"). (Doc No. 2, Ex. A). Wachovia assisted the County in drafting portions of those amendments needed to allow securities lending, reviewed the Revised County Guidelines, and encouraged the Clerk to obtain approval of the Revised County Guidelines from the Sarasota County Board of County Commissioners. (Doc. No. 2, ¶ 16). In contrast to the Agreement and the Wachovia Guidelines, Wachovia was not a party to the Revised County Guidelines.

Under Paragraph 6.1 of the Agreement, Wachovia had the authority to act as the County's agent and to invest the cash collateral received from borrowers in accordance with the Wachovia Guidelines. (Doc. No. 2, Ex. C). In return for Wachovia's management of the securities lending program, Wachovia was compensated, in part, by receiving 40% of the revenues generated by the investments of cash collateral.

Both the Wachovia Guidelines and the Revised County Guidelines mandate conservative investments of the cash collateral; however, Wachovia deviated from that mandate with respect to three investments known as Altius III Funding, Ltd. (the "Altius Bonds"), the Option One Mortgage Notes OONIM 07-3 (the "OONIM Notes"), and the Lehman Bros. Notes (the

"Lehman Notes").  (Doc. No. 2, ¶ 28).  Wachovia purchased the investments pursuant to the power granted to it under the Agreement, and as such, Wachovia did not discuss these investments with the County before purchasing them.  (Doc. No. 2, ¶ 30).

    A.    <u>The Altius Bonds</u>

On September 8, 2006, Wachovia arranged for the County's purchase of $20 million face value of the Altius Bonds.  (Doc. No. 2, ¶ 29).  However, this investment did not conform to the conservative investment policies set forth in the Wachovia Guidelines and Revised County Guidelines.  First, the Altius Bonds exceeded the maturity guidelines of the Wachovia Guidelines and the Revised County Guidelines.  Second, the Altius Bonds were prohibited securities because they violated the prohibition on derivative securities in the Wachovia Guidelines.  Third, the Altius Bonds failed to conform to the secondary market requirements of the Revised County Guidelines and violated the County's risk-averse investment policies because they were high-risk investments.  Finally, although not explicitly required in the Revised County Guidelines or the Wachovia Guidelines, the Altius Bonds were not issued by an American company.  (Doc. No. 2, ¶ 34).

    B.    <u>The OONIM Notes</u>

On April 20, 2007, Wachovia purchased $20 million of the OONIM Notes. Wachovia never told the County that OONIM was a trust consisting primarily of a pool of first and second lien adjustable-rate and fixed-rate mortgage loans.  (Doc. No. 2, ¶¶ 35-36).  The OONIM Notes deviated from the Wachovia Guidelines and the Revised County Guidelines because the maturities exceeded the guidelines.  Furthermore, the OONIM notes were high-risk investments because they were mortgage-related instead of mortgage-backed.  Finally, the OONIM Notes

were prohibited because they were derivative securities. (Doc. No. 2, ¶ 40).

### C. The Lehman Notes

On March 20, 2007, Wachovia placed $40 million of the Lehman Notes in the County's securities lending portfolio. At that time, the Lehman Notes were the largest single corporate securities holding in the County's securities lending portfolio. The County alleges this failure to diversify was not prudent; that Wachovia should have informed the County that the risk was exacerbated by a concentrated position in Lehman; and that the risk could have been reduced by further diversification of the County's securities lending portfolio. (Doc. No. 2, ¶¶ 41–42). Based on media reports and the downgrading of Lehman in June 2008, Wachovia clearly knew the Lehman Notes were no longer consistent with the County's conservative investment objectives. Yet, Wachovia never advised the County of this, and this information would have given the County the reason and opportunity to dispose of the Lehman Notes. (Doc. No. 2, ¶ 46).

### D. Current Value of the Investments

The County continues to hold the Altius Bonds, OONIM Notes, and Lehman Notes. As of May 26, 2010, the three investments reflected an unrealized loss of $39,787,510.88. The County alleges it did not discover and could not have discovered the basis for its claims until it retained counsel to conduct an investigation with the assistance of an independent investment management expert. (Doc. No. 2, ¶¶ 55–56).

## II. Standard of Review for a Motion to Dismiss

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959,

962 (11th Cir. 2000) (citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553 (2007) (citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

**III. Motion to Dismiss**

Wachovia moves to dismiss Counts I, II, III, and V of the Complaint. Accordingly, the Court will analyze Wachovia's argument regarding each count.

    A.    FSIPA (Count I)

In Count I, the County alleges that Wachovia violated FSIPA by purchasing the Altius Bonds and OONIM Notes, because those investments did not comply with the Wachovia Guidelines. Additionally, the County contends that Wachovia violated FSIPA because Wachovia failed to advise the County that the Altius Bonds and OONIM Notes did not comply with the Wachovia Guidelines and failed to advise the County of the risks associated with its

continued holding of the Lehman Notes. Chapter 517 of the Florida Statutes addresses FSIPA violations. Pursuant to Florida Statute § 517.301:

> It is unlawful and a violation of the provisions of this chapter for a person:
> (a) In connection with the rendering of any investment advice or in connection with the offer, sale or purchase of any investment or security . . . directly or indirectly:
> 1. To employ any device, scheme, or artifice to defraud;
> 2. To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstance under which they were made, not misleading; or
> 3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

The remedy for a violation of Section 517.301 is contained in Florida Statutes Section 517.211(2) and states:

> Any person purchasing or selling a security in violation of s. 517.301, and every . . . agent of or for the purchaser or seller, if the . . . agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person . . . purchasing the security from such person in an action for recission if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

Wachovia argues that the County has failed to state a claim under FSIPA because: (1) the County did not purchase the securities from Wachovia and (2) FSIPA does not provide a cause of action for "holding" a security or for the mere rendering of investment advice.[1]

---

[1] Wachovia also argues the FSIPA claim should be dismissed because: (1) to the extent the claim is related to the Altius Bonds and OONIM Notes, such a claim is barred by the statute of limitations; and (2) the County has failed to plead its FSIPA claim—grounded in fraud—with particularity. However, because the Court finds that dismissal is warranted due to the fact that the County did not purchase the securities from Wachovia, Wachovia was not liable as an agent, and FSIPA does not provide a cause of action for "holding" a security or for the mere rendering of investment advice, the Court need not address these two additional arguments for dismissal.

### 1. The County Did Not Purchase Securities from Wachovia and Wachovia is Not Liable as a Seller's Agent

Wachovia first argues that it is not liable under FSIPA, Florida Statutes Section 517.301, because the County did not purchase securities from Wachovia. Instead, Wachovia acted as an intermediary between the County and the sellers of the Altius Bonds, the OONIM Notes, and the Lehman Notes. (Doc. No. 12 at 8). The County responds that by recommending the securities, Wachovia "participated and aided" in the "sale" of securities as the term "sale" is defined in Florida Statutes Section 517.021(20). (Doc. No. 2, ¶ 61). Furthermore, the County contends that Wachovia either arranged for the purchase, purchased, or placed the securities in the County's securities lending portfolio (Doc. No. 2, ¶¶ 29, 35, 41), and none of the transactions at issue could have occurred without Wachovia's participation and aiding in their sale to the County. (Doc. No. 2, ¶¶ 29–32, 35–36, 41–42).

The Florida Supreme Court has stated that for the remedies of Section 517.211(2) to apply to a violation of 517.301, buyer/seller privity is required. E.F. Hutton & Co., Inc. v. Rousseff, 537 So. 2d 978, 981 (Fla. 1989). In the instant case, Wachovia acted as the County's intermediary in acquiring the securities at issue. The County did not buy the securities from Wachovia and the County did not sell the securities to Wachovia. Therefore, the buyer/seller privity required by Section 517.211 is not present.

However, there is authority for the premise that the seller's agent can be liable if the agent solicits the sale of securities. See Hilliard v. Black, 125 F. Supp. 2d 1071, 1083 (N.D. Fla. 2000) (explaining the definition of "seller" under Section 517.211 has been expanded to include those who solicit sales of securities); Beltram v. Shackleford, Farrior, Stallings & Evans, 725 F. Supp. 499, 500 (M.D. Fla. 1989) (granting the defendant's motion for summary judgement on a

FSIPA claim because the plaintiff failed to show the defendant "solicited the subject sale of securities for its financial gain").

Further support for the premise that the seller's agent can be held liable comes from cases interpreting Section 12 of the Securities Act of 1933, because Florida courts look to such laws when interpreting FSIPA. See Rousseff, 537 So. 2d at 981; Waters v. Int'l Precious Metals Corp., 172 F.R.D. 479, 495 (S.D. Fla. 1996). For example, in Pinter v. Dahl, 486 U.S. 622 (1988), the United States Supreme Court recognized that a seller's agent can be held liable under Section 12 in certain circumstances. Id. at 646. Specifically, the Pinter Court found that a person can be held liable under Section 12 if he or she "successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interest or those of the securities owner." Id. at 647. "However, the 'mere collection of a commission does not automatically convert a broker's conduct into solicitation,' particularly absent any evidence of other profits, incentives or promotions in connection with the securities at issue." In re CNL Hotels & Resorts, Inc., 2005 WL 2291729 at *5 (M.D. Fla. Sept. 20, 2005) (quoting Montcalm County Bd. of Comm'rs v. McDonald & Co. Sec., Inc., 833 F. Supp. 1255, 1233 (W.D. Mich. 1993)). Without solicitation on the part of a broker, liability may not be imposed under Section 12(2). Ryder Intl. Corp. v. First Am. Natl. Bank, 943 F.2d 1521, 1531 (11th Cir. 1991).

In the instant case, the County entered into a contractual agreement with Wachovia, in which the County gave Wachovia the authority to act as its agent to purchase investments using its cash collateral. The alleged wrongdoing by Wachovia consists of failing to select investments for the County that complied with the Guidelines and Wachovia's concealment of this from the County. There is no allegation that the underlying investments themselves are fraudulent

investments. Since the alleged "fraud" was external to the investments themselves, the Court is not persuaded that Wachovia's conduct is the type of conduct that FSIPA was designed to protect against.

The purpose of FSIPA is "to protect the public from fraudulent and deceptive practices in the sale and marketing of securities." Arthur Young & Co. v. Mariner Corp., 630 So. 2d 1199, 1203 (Fla. 4th DCA 1994) (citations omitted). In the instant case, the purchase of the Altius Bonds and OONIM Notes was only "wrongful" to the extent that they did not comply with the Wachovia Guidelines. However, whether FSIPA is violated should not be based on who the buyer of the securities is. Stated differently, had Wachovia purchased the Altius Bonds and OONIM Notes for any other buyer that did not have contractual restrictions on the types of investments he or she could hold, there does not appear to be a FSIPA violation alleged based on the specific allegations regarding Wachovia's conduct. Furthermore, given the fact that Wachovia acted as the County's agent (not the agent of the sellers), and given the fact that Wachovia only benefitted from these investments to the extent that they generated revenues (upon which Wachovia received a 40% commission), the County's argument that Wachovia's conduct violated FSIPA is not well-taken. Notably absent from the County's response to the Motion to Dismiss is any citation to case law that recognizes FSIPA liability due to a buyer's agent giving the buyer improper investment selection advice. Accordingly, the Court finds that Wachovia's Motion to Dismiss the County's FSIPA claim must be granted.

    **2.  FSIPA Does Not Provide a Private Right of Action for "Holding" a Security based on Improper Investment Advice**

The County alleges that Wachovia rendered fraudulent investment advice in violation of Section 517.301 when the County continued to hold the Altius Bonds and OONIM Notes, despite the fact that the Altius Bonds and OONIM Notes failed to satisfy the Wachovia Guidelines and/or the Revised County Guidelines. (Doc. 2, ¶ 63). The County further alleges that Wachovia rendered fraudulent investment advice as to the Lehman Notes because Wachovia knew that due to Lehman's deteriorating situation, the Lehman Notes had become too risky to constitute such a large share of the County's investments in light of the County's conservative investment policy. Because Wachovia did not advise the County to dispose of the Altius Bonds, OONIM Notes, and Lehman Notes, the County continued to hold the securities and lost most of its principal investment in those securities.

Wachovia argues that the County's FSIPA holding claim fails because "neither federal nor Florida securities laws allow an action for the improper 'holding' of securities." City of St. Petersburg v. Wachovia Bank, N.A., 2010 WL 2991431 at *4 (M.D. Fla. July 27, 2010) (following the plain language of Section 517.211, which does not state that a "holder" may bring a cause of action under Florida's statutory security laws); see also Pafumi v. Davidson, 2007 WL 1729969 at *3 n. 4 (S.D. Fla. Jun. 14, 2007) (finding "securities holding claims are not permitted in actions pursuant to Florida and federal securities laws"); Rogers v. Cisco Systems, Inc., 268 F. Supp. 2d 1305, 1316 (N.D. Fla. 2003) ("'holding' claims may not be asserted under *either* the federal or Florida securities laws").

The County responds that "[u]nlike its federal counterpart, a securities fraud claim under Section 517.301 may also be brought for fraud 'in connection with the rendering of any investment advice.'" Ward v. Atlantic Sec. Bank, 777 So. 2d 1144, 1147 (Fla. 4th DCA 2001)

10

(reversing the grant of summary judgment to the defendant bank based on evidence that a representative of the bank allegedly advised the plaintiff to retain his investment despite allegations that the bank knew the investment was in financial jeopardy). The County also relies on the Eleventh Circuit's statement: "while 'holding' claims are not actionable under federal securities laws, they may well be actionable under state laws." Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334, 1343 (11th Cir. 2002). The County asserts that Rousseff's indication that Section 517.211(2) protects only buyers and sellers should not control because the language—"[i]n connection with the rendering of any investment advice"—was added to Section 517.301(a) after Rousseff was decided. Finally, the County argues "[i]t must be assumed that a provision enacted by the legislature is intended to have some useful purpose." Smith v. Piezo Technology & Professional Adm'rs, 427 So.2d 182, 184 (Fla. 1983). Thus, argues the County, the Florida legislature obviously intended a remedy for holding claims resulting from fraudulent investment advice. (Doc. 14 at 9).

The court in City of St. Petersburg v. Wachovia Bank, N.A. recently dismissed a nearly identical FSIPA holding claim arising out of a securities lending contract and found that a "holder" of securities may not bring a claim under FSIPA. 2010 WL 2991431 at *4. In making its decision, the City of St. Petersburg court looked to the plain language of section 517.211(2) which permits only a buyer or seller of securities to bring a cause of action under section 517.301 and looked to the Florida Supreme Court's decision in Rouseff which judicially established the buyer/seller privity requirement of 517.211(2). Id.; see Fla. Stat. § 517.211(2) (referring only to a person "purchasing or selling a security in violation of s. 517.301"). In City of St. Petersburg, the plaintiff relied upon the Ward decision from the Florida Fourth District

11

Court of Appeals just as the County has relied upon it in the instant case. In reversing a grant of summary judgment to a defendant bank, the Ward court allowed the plaintiff, a "holder" of securities, to go forward with his FSIPA claim against the bank because of section 517.301's prohibition of fraud "in connection with the rendering of any investment advice." Ward, 777 So. 2d at 1147. The City of St. Petersburg court disregarded the Ward decision, stating "the Ward opinion cannot be reconciled with the language of section 517.211 requiring a purchaser or seller to bring a cause of action under 517.301. Hence, this [c]ourt will follow Rouseff and the plain language of the Florida securities law that a 'holder' may not bring a statutory securities fraud action." City of St. Petersburg, 2010 WL 2991431 at *4.

In the absence of a statutory remedy, this Court will follow City of St. Petersburg and the plain language of section 517.211(2) that requires an action to be brought in connection with the purchase or sale of a security and does not extend the scope of FSIPA to include holding claims, even if such claims are based upon fraudulent investment advice. Accordingly, the Court grants Wachovia's Motion to Dismiss the County's FSIPA holding claim.

   B. <u>Negligence and Breach of Fiduciary Duty (Counts II and III)</u>

In Counts II and III, the County claims that Wachovia was negligent and breached its fiduciary duty to the County regarding these three investments. Wachovia argues that the County's claims for negligence and breach of fiduciary duty are barred by the economic loss rule, the parties did not intend to create a fiduciary relationship, and Wachovia was under no obligation to predict the future with respect to the devaluation of the Lehman Notes. (Doc. No. 12 at 15–21). The County responds that the claims are not barred by the economic loss rule, a fiduciary relationship was created, and although Wachovia was not required to predict the future,

12

Wachovia breached its fiduciary duty by failing to warn the County of Lehman's declining financial strength prior to the devaluation of the Lehman Notes. (Doc. No. 14 at 11–16). As explained below, Wachovia's Motion to Dismiss these claims is denied.

### 1. The Economic Loss Rule Does Not Bar the County's Claims for Negligence and Breach of Fiduciary Duty

"The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004). One of the circumstances in which the economic loss rule applies is "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising out of the contract." Id. The economic loss rule "is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." Id. "Where the duties breached do not arise under the contract, however, an action for an independent tort may exist even though the parties are in contractual privity." City of St. Petersburg, 2010 WL 2991431 at *2.

Wachovia argues that the economic loss rule bars the County's negligence claim because the negligence is based on a breach of Wachovia's duties under the Agreement. The flaw in Wachovia's argument is that the parties recognized in Paragraph 12.2 of the Agreement that Wachovia could be held liable for losses caused by Wachovia's own negligence. As such, the Court finds that the County's negligence claim is not barred by the economic loss rule. See PNC Bank, N.A. v. Colonial Bank, N.A., 2008 WL 4790122 at *4 (M.D. Fla. Nov. 3, 2008) (stating that the economic loss rule does not apply when the parties accept tort remedies in their contract); PNC Bank, N.A. v. Colonial Bank, N.A., 2008 WL 2917639 at *2-3 (M.D. Fla. July

24, 2008).

Next, it must be determined whether the economic loss rule bars the County's claim for breach of fiduciary duty. In Moransais v. Heathman, 744 So. 2d 973 (Fla. 1999), the Florida Supreme Court found that the economic loss rule does not bar actions for breach of fiduciary duty even when there is an underlying contract between the parties. Id. at 983–84; see also Invo v. Somerset Venturer, Inc., 751 So. 2d 1263, 1267 (Fla. 3d DCA 2000); First Equity Corp. of Fla., Inc. v. Watkins, 1999 WL 542639 at *1 (Fla. 3d DCA July 28, 1999) (holding that an independent fiduciary duty arises from a broker's purchase and sale of securities). Although contrary precedent does exist,[2] "[i]f the state's highest court does not provide any guidance, federal courts are 'bound to adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.'" Fla. Auto. Joint Underwriting Assn. v. Milliman, Inc., 2007 WL 1341127 at *6 (N.D. Fla. May 3, 2007). There is no "persuasive" indication that the Florida Supreme Court would disagree with Florida's Third District Court of Appeal in First Equity Corp. of Florida. Crowell v. Morgan Stanley Dean Witter Serv., Co., Inc., 87 F. Supp. 2d 1287, 1293 (S.D. Fla. 2000).

Finally, Wachovia argues the breach of fiduciary duty claim is barred because it arose

---

[2] Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co., 208 F. Supp. 2d 1310, 1317 (S.D. Fla. 2002) (dismissing a breach of fiduciary duty claim because the allegations for the breach of fiduciary duty claim were not independent of the parties' contracts); Detwiler v. Bank of Central Fla., 736 So. 2d 757, 759 (Fla. 5th DCA 1999) (holding "a cause of action for breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties"). Detwiler does not address the Florida Supreme Court's opinion in Moransais, and was rendered just one day after Moransais, therefore, "it is not as reliable as the more recent cases from the Third District Court of Appeal." Fla. Automobile Joint Underwriting Ass'n., 2007 WL 1341127 at *6.

from the contract. "While the economic loss rule does not automatically bar a breach of fiduciary duty claim, the rule does apply when the claim for breach of fiduciary duty is based upon and inextricably intertwined with the claim for breach of contract." Action Nissan v. Hyundai Motor Am., 617 F. Supp. 2d 1177, 1192–93 (M.D. Fla. 2008). But, the tort is independent if the plaintiff must prove facts "separate and distinct from the breach of contract." Auto Owners Ins. Co v. ACE Elec. Svcs., Inc., 648 F. Supp. 2d 1371, 1381 (M.D. Fla. 2009) (quoting Indemnity Ins. Co. of N. Am., 891 So. 2d at 537). To support breach of fiduciary duty claim, the County does not merely allege the same facts as its breach of contract claim. Instead, the County alleges that Wachovia held itself out to be a knowledgeable, qualified, and experienced investment advisor and that the investments did not comply with the Revised County Guidelines. (Doc. No. 2, ¶¶ 67, 70, 74). These allegations are independent of the contract, particularly because Wachovia was not a party to the Revised County Guidelines.

### 2.  Wachovia Had a Fiduciary Duty to the County

Wachovia contends that even if the economic loss rule does not bar the claim for breach of fiduciary duty, no fiduciary relationship was created because the agreement neither specifies that Wachovia will act as a fiduciary for the County, nor states that Wachovia is bound to follow any fiduciary duties. However, the Eleventh Circuit has held: "[t]he law is clear that a broker owes a fiduciary duty of care and loyalty to a securities investor." Gochnauer v. A.G. Edwards & Sons, Inc., 810 F.2d 1042, 1049 (11th Cir. 1987). Furthermore, in City of St. Petersburg, a case involving similar facts and identical Wachovia Guidelines, the court reasoned,

> [The defendant] acted as an investor that purchased and sold investments for the City. Such a position gives rise to professional standards that exist apart from the contract that controls the relationship between the investor and customer.

15

2010 WL 2991431 at *3. Therefore, in accordance with City of St. Petersburg, this Court finds that the County alleged sufficient facts to support the assertion that Wachovia owed a fiduciary duty to the County.

### 3. Wachovia Failed to Warn the County of Lehman's Negative Outlook

Wachovia argues it can not be held liable for breach of fiduciary duty resulting from its failure to predict and safeguard the County against the devaluation of the Lehman Notes. Wachovia relies on Board of Trustee of Southern California IBEW-NECA Defined Contribution Plan v. Bank of New York Mellon Corp., 2010 WL 1558587 (S.D. NY Apr. 14, 2010), where the court held that although "it was 'theoretically conceivable' that defendants should have known about Lehman's precarious financial condition," the plaintiff failed to state a cause of action for breach of fiduciary duty.[3] Id. at *6.

The Court is not persuaded by Wachovia's argument. "[A] fiduciary has a fundamental duty to furnish information . . . [that] entails not only a negative duty not to misinform, but also an affirmative duty to inform when . . . that silence might be harmful." Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc., 93 F.3d 1171, 1180 (3d Cir. 1996) (internal citations omitted). The County alleges that based on media reports and the downgrading in Lehman's rating, Wachovia knew Lehman's financial situation was deteriorating, and as a result, the County's investments in Lehman were inconsistent with the

---

[3]The court in the Southern District of New York has since vacated its order in the Board of Trustees of Southern California IBEW-NECA Defined Contribution Plan case due to newly discovered evidence that allegedly shows defendants' actual knowledge of Lehman's precarious financial condition. Board of Trustees of the Southern California IBEW-NECA Defined Contribution Plan v. Bank of New York Mellon Corporation, 2010 WL 3958790 (S.D. NY Sept. 7, 2010).

conservative investment policies of the Revised County Guidelines. (Doc. No. 2, ¶ 46). Furthermore, the County alleges Wachovia was aware of the County's policies because Wachovia assisted in drafting the Revised County Guidelines. Therefore, the Court finds the County's claim for breach of fiduciary duty as to the Lehman Notes is adequately pled. Wachovia's Motion to Dismiss as to the negligence and breach of fiduciary duty claims is denied.

### C. Unjust Enrichment (Count V)

Next, Wachovia argues the County's unjust enrichment claim must be dismissed because the parties have a valid contract covering the same subject matter as the unjust enrichment claim. (Doc. No. 12 at 24). The County responds that in accordance with Williams v. Bear Stearns & Co., 725 So. 2d 397 (Fla. 5th DCA 1998), "[u]ntil an express contract is proven, a motion to dismiss [a claim of unjust enrichment] . . . is premature." Id. at 400.

A claim for the equitable remedy of unjust enrichment may not be brought if the parties have a valid contract covering the same subject matter as the unjust enrichment claim. Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp., 2006 WL 4990903 at *7 (M.D. Fla. Jun. 15, 2006) (quoting ThunderWave Inc., v. Carnival Corp., 954 F. Supp. 1562, 1566 (S.D. Fla. 1997)); Lewis v. Seneff, 654 F. Supp. 2d 1349, 1370 (M.D. Fla. 2009) (dismissing an unjust enrichment claim because the consideration at issue was the subject of a contract); Restrepo v. Wells Fargo Bank, N.A., 2010 WL 374771 at *3 (S.D. Fla. Feb. 3, 2010) (dismissing an unjust enrichment claim with prejudice and noting the plaintiff alleged and attached an express contract to the complaint).

The County's reliance on Williams v. Bear Stearns & Co. is misplaced, because in that

case the plaintiff did not have a contract with some of the defendants. Id. at 400. In contrast, Wachovia and the County have a contractual relationship based on the Agreement and the Wachovia Guidelines, both of which are attached to the Complaint. See (Doc. No. 2, Ex. C, D). Therefore, because Wachovia and the County were governed by an express contract covering the same subject matter as the unjust enrichment claim, the unjust enrichment claim is dismissed.

**IV.** **Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (Doc. No. 12) is GRANTED IN PART and DENIED IN PART: The Motion is GRANTED as to Counts I (FSIPA) and V (unjust enrichment); otherwise, the Motion is DENIED.

Done and ordered on this 8th day of November, 2010.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record