## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| KAREN E. RUSHING, as Clerk of the Circuit Court and County Comptroller of Sarasota County, Florida,<br><br>        Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., as successor-in-interest to Wachovia Bank, N.A.,<br><br>        Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:    Case No.: 8:10-cv-01572-SCB-AEP<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## DEFENDANTS' MOTION IN LIMINE
## TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT AT TRIAL AND
## INCORPORATED MEMORANDUM IN SUPPORT

Defendant Wells Fargo Bank, N.A., as successor-in-interest to Wachovia Bank, N.A.

("Wachovia"), files this motion in limine to exclude, in part, the testimony of Plaintiff's

expert witness, Robert E. Conner.

## I.    INTRODUCTION

Plaintiff Karen E. Rushing, as Clerk of the Circuit Court and County Comptroller of

Sarasota County, Florida, filed this action to recover purported investment losses arising out

of its participation in a securities lending program administered by a division of Wachovia,

Wachovia Global Securities Lending.  The Plaintiff has asserted breach of contract, breach of

fiduciary duty and negligence claims relating to alleged losses on two separate investments,

the Altius Investment and the Lehman Note.

On February 6, 2012, Plaintiff disclosed Robert E. Conner as its expert witness for trial and submitted Mr. Conner's expert report.  Exhibit A (Expert Report of Robert Conner ("Conner Report")).  Mr. Conner's expert report sets forth his expert opinions and his proposed trial testimony.  *Id.*  Defendant deposed Mr. Conner about his expert opinions on April 18, 2012.  Exhibit B (Deposition Transcript of Robert Conner ("Conner Dep."))[1].  The Court should grant an order *in limine* limiting Mr. Conner's trial testimony in several respects.

First, Mr. Conner should be prohibited from testifying that the fee that Wachovia was earning under the parties' Securities Lending Agreement was unjustified.  As Mr. Conner's curriculum vitae shows, and his deposition testimony confirms, Mr. Conner has no work experience, training or education with respect to contracts between securities lending agents and their clients that would qualify him to opine on whether the contract was typical or fair in any way.  Further, the Agreement was the result of an arms-length negotiation between two sophisticated parties.  There is no basis for challenging the result of those negotiations.  Finally, whether the fee that Wachovia earned under the agreement was justified is simply not relevant to any of the claims asserted in this action.  Accordingly, Mr. Conner should be prohibited from offering such testimony at trial.

Second, the Court should issue an order *in limine* prohibiting Mr. Conner from offering testimony at trial that the securities lending investment guidelines that were agreed to by the parties, and made part of the contract, were "inadequate" because they did not

---

[1] Specifically cited excerpts of deposition testimony are attached at Exhibit B.  The entire deposition transcript can be made available to the Court upon request.

sufficiently take into account the investment objectives and risk tolerances of Plaintiff. Again, Plaintiff was a sophisticated investor who had every opportunity during negotiations to review the investment guidelines to determine whether they were consistent with Plaintiff's own investment objectives and risk tolerances.  Moreover, Mr. Conner's proposed testimony is based on a series of interpretations of the Agreement and Investment Guidelines. It is improper, however, for an expert to testify as to opinions with respect to how an agreement is to be interpreted.

Third, the Court should issue an order *in limine* prohibiting Mr. Conner from offering legal conclusions as part of his testimony.  The improper testimony includes his opinions that: (1) the purchase of the Altius investment violated Rule 144A of the Securities Act of 1933; (2) the purchase of the Altius Investment and the Lehman Note violated the Agreement; (3) Wachovia owed a fiduciary duty to Plaintiff which it breached; and (4) Wachovia was negligent.  All these opinions improperly invade the province of the Court and the jury.

Fourth, the Court should issue an order *in limine* prohibiting Mr. Conner from offering opinions as to what facts certain evidence in the case demonstrates.  The facts of the case are to be determined by the jury.  Although counsel may argue, in closing argument, what the evidence shows, the determination of what evidence is credible and what facts the evidence demonstrates is with the sole province of the jury.  There is no basis to allow Mr. Conner to opine on what evidence he believes is credible and what evidence is not credible or what facts he believes the evidence demonstrates.

Fifth, the Court should issue an order *in limine* prohibiting Mr. Conner from offering testimony that the purchase of the Altius Investment and/or Lehman Note violated Plaintiff's internal investment policy (as opposed to the parties' investment guidelines). The contract at issue in this case is the Agreement between Plaintiff and Wachovia. That Agreement identifies which investments Wachovia was permitted to purchase. Plaintiff's investment policy was not made a part of the Agreement, and Wachovia is not bound thereby. Such testimony, therefore, should be excluded because it would confuse and mislead the jury and would be unfairly prejudicial to Wachovia.

## II.    ARGUMENT

### A.    Standard For A Motion In Limine

"Trial judges are authorized to rule on motions in limine pursuant to the authority to manage trials . . . ." *Hodgetts v. City of Venice, Florida*, No. 8:11-cv-00144, 2011 WL 2192810, at *1 (M.D. Fla. June 6, 2011) (citing *Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1984)). "The real purpose of a Motion In Limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial." *Id.*

### B.    Standard For Admissibility of Expert Testimony

Rule 702 of the Federal Rules of Evidence allows expert testimony consisting of "scientific, technical or other specialized knowledge" as long as the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Trial courts may admit expert testimony only if the following three requirements are met: "(1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently

reliable, and (3) the testimony will assist the trier of fact." *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 780 (11th Cir. 2004).  "The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1261 (11th Cir. 2004).

**C.     Mr. Conner Should Not Be Permitted to Testify That Wachovia's Compensation Under the Agreement Was Excessive and/or Unjustified.**

Under the Securities Lending Agency Agreement (the "Agreement") between the parties, Wachovia was entitled to earn a fee that was 40% of the income generated by the program.  In his expert report, at pages 4 through 6, Mr. Conner opines that that 40% fee was excessive and unjustified.

Nothing in Mr. Conner's background, however, qualifies him to opine on this issue. Thus, this testimony should be excluded.  *Club Car, Inc.*, 362 F.3d at 780 (expert must be "qualified to testify on the topic at issue").  Mr. Conner's only experience with the workings of securities lending programs came over 30 years ago when he was involved in helping Prudential set up a securities lending program.  Exhibit B (Conner Dep.) at 28:22-31:11.  He has never testified, or been qualified by any court to testify, on securities lending issues.  *Id.* at 72:3-74:22.  Further, although he says he had some experience 30 years ago setting up the operations of a securities lending program at Prudential, he did not identify any aspect of that experience that would qualify him to testify on the "fairness" or any other aspect of a contract between a securities lending agent and its client.  Indeed, Mr. Conner admitted in his deposition that he had no involvement in the process by which particular contracts and investment guidelines were negotiated with clients.  *Id.* at 32:3-34:6, 37:3-24.  He also

testified that he had no recollection of how Prudential was compensated for its services as a securities lending agent. *Id.* at 45:24-46:3.

Given his lack of expertise and experience with respect to the specific contracts between securities lending agents and their clients and how fees are negotiated and determined, Mr. Conner is not qualified to opine on the fairness of the compensation that Wachovia was entitled to receive under the agreement.

Furthermore, there is evidence that the Agreement at issue in this case was negotiated over a period of several years. Plaintiff is a sophisticated investor and had all drafts of the Agreement reviewed by its own legal counsel. Thus, Plaintiff had ample expertise, time and opportunity to ask Wachovia to justify all aspects of the Agreement, including the compensation that Wachovia was to receive under the Agreement.

Wachovia's compensation is also not relevant to any claim in this case. Plaintiff is not contending that Wachovia's compensation was a breach of any duty Wachovia owed to Plaintiff, nor is Plaintiff seeking to recover Wachovia's fee as damages.

Finally, even if Mr. Conner's opinion that Wachovia's compensation under the Agreement was excessive had any relevance to the issues in this case, and it does not, it should still be excluded because any potential relevance clearly would be outweighed by the prejudicial effect on the jury of testimony that Wachovia was simply "paid too much" for the services it rendered under the Agreement.

**D.    Mr. Conner Should Not Be Permitted to Testify That the Agreement Did Not Adequately Take into Account Plaintiff's Investment Objectives and Risk Tolerances.**

At pages 8 through 12 of his report, Mr. Conner opines that the investment guidelines (the "Investment Guidelines") that were negotiated and agreed to by the parties and were made part of the Agreement at issue in this case were "inadequate" in several respects because they did not sufficiently take into account the investment objectives and risk tolerances of Plaintiff.  This testimony should be excluded for several reasons.  First, as shown above, Mr. Conner has no experience with the terms of specific investment guidelines that are part of securities lending contracts.  Mr. Conner, therefore, has no qualifications to offer such an opinion.

Second, much of this proposed testimony constitutes Mr. Conner's attempts to offer his interpretations of the Agreement.  An expert witness, however, is not permitted to offer testimony that attempts to interpret a contract.  *McMahan Secs. Co. L.P. v. FB Foods, Inc.*, No. 8:04-cv-1791, 2007 WL 473666, at *1-2 (M.D. Fla. Feb. 8, 2007) (excluding expert testimony construing a contract).  When a contract is clear and unambiguous, it will be interpreted by the court as a matter of law.  *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011 n.10 (3d Cir. 1980) (applying Pennsylvania law).  On the other hand, when a contract is ambiguous, then it is interpreted by the jury.  *Id.*  In neither case, however, may an expert witness offer testimony that interprets a contract.  *McMahan*, 2007 WL 473666, at *2 (expert's opinion construing contract excluded where "interpretation of a written contract is a matter of law to be determined by the court"); *see also Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F.Supp.2d 417, 421 (W.D. Pa. 2006) (expert's "opinions on the issue of contract construction would not assist the jury in understanding coverage, are based solely on [expert's] subjective interpretation of the policy language, and are impermissible legal

conclusions"); *Sparton Corp. v. United States*, 77 Fed.Cl. 1, 8 (Fed.Cl. 2007) ("In the

absence of specialized trade usage, expert testimony regarding proper contract interpretation

is inadmissible, as is expert testimony regarding the legal significance of the contract

language."); *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 549 (6th Cir. 1981) ("Absent

any need to clarify or define terms of art, science, or trade, expert opinion testimony to

interpret contract language is inadmissible.").

Examples of such improper testimony that Mr. Conner intends to offer include the

following:

"Sarasota's guideline on ABS [Asset-Backed Securities] apparently
written by Wachovia, was inadequate to determine the appropriate level of
risk of the investment . . ." Exhibit A (Conner Report) at p. 9.

"This section [Section L of the Investment Guidelines] fails to even
specify a maturity limit for these assets." *Id.*

"Note however that only the maturity of the ABS was addressed, and
another important parameter of the program, maturity mismatch, remained
unaddressed." *Id.*

"As evidence that MBS [Mortgage Backed Securities] was never intended
in ABS consider what occurs if you permit MBS in ABS." *Id.* at p. 10.

"Note that in addition to changing the limit from 25 months to 3 years, the
words "Expected Final" have been added.  These two little words have
major ramification. The entire meaning of "maturity" has been altered in a
manner that permits much more risky investments." *Id.* at p. 11.

"Permitting the purchase of assets with decades of extension risk and with
non-government agency backed collateral, is massively more risky than
the Section D mortgages of two years maximum maturity and an agency
guarantee and is clearly contrary to the stated primary objective of safety
of capital." *Id.* at p. 12.

These attempts to interpret the meaning and significance of various contractual provisions in order to find ambiguity and/or conflict are, under the authority cited above, an impermissible invasion of the province of the Court and jury.

Finally, the principal point of this section of Mr. Conner's report, i.e., that the Investment Guidelines fail to adequately take account of Plaintiff's investment objectives and risk tolerances, fails for another, even more fundamental reason.  The Agreement between Wachovia and Plaintiff was not a contract of adhesion.  Plaintiff is a large sophisticated governmental entity that negotiated the terms of the Agreement over at least a 2-year period, with its own legal counsel reviewing drafts throughout the process.  Exhibit C (January 30, 2004 E-mail); Exhibit D (April 7, 2004 E-mail); Exhibit E (April 16, 2004 E-mail); Exhibit F (Securities Lending Agency Agreement); Exhibit G (Securities Lending Investment Guidelines); and Exhibit H (March 31, 2006 Letter Amendment).  Plaintiff, better than anyone, understood its own investment objectives and risk tolerances.  Plaintiff did not have to sign, and should not have signed, the Agreement, if any part of it, including the Investment Guidelines, was unacceptable or did not adequately reflect Plaintiff's investment objectives and risk tolerances.  That is, having expressly signed a contract that permitted Wachovia to purchase certain types of investments, Plaintiff cannot now be heard to complain that the very investments that the contract permitted Wachovia to purchase were "too risky" and did not reflect Plaintiff's investment objectives and risk tolerances, which Plaintiff knew better than anyone.

**E.      Mr. Conner Should Not Be Permitted to Testify To Legal Conclusions.**

An expert witness may not testify as to legal conclusions or testify that a particular legal standard has been met.  There are two reasons for this prohibition.  First, expert testimony in the form of legal conclusions invades the province of the court to instruct the jury on the law.  *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law.")  Second, it is not helpful to the jury because an expert is in no better position to conclude whether a legal standard has been satisfied or a legal conclusion should be drawn than is a jury which has been properly instructed on the standard or conclusion.  *See, e.g., Dubiel v. Columbia Hosp. (Palm Beaches) Ltd. P'ship*, No. 04-80283-CIV, 2005 WL 5955691, at *4-5 (S.D. Fla. Jan. 11, 2005) (expert's proferred testimony "perform[ing] basic functions properly within the province of the jury," such as "evaluat[ing] the credibility of witnesses, weigh[ing] the evidence, and then draw[ing] conclusions by applying his understanding of the law to his own factual determinations" must be excluded as it "will not assist the trier of fact to understand the evidence or to determine a fact in issue").

In his report, Mr. Conner clearly offers opinions that constitute legal conclusions.  For example, he opines that the purchase of the Altius Investment violated Rule 144A of the Securities Act of 1933 and also Florida Statute 218.415.  Specifically, Mr. Conner states:

> As stated on the cover sheet of the Offering Circular, the synthetic Altius CDO was to be offered to qualified institutional buyers ("QIB"), as defined in Rule 144A under the United States Securities Act of 1933.  Sarasota County is not a qualified institutional buyer and consequently is not permitted to purchase Altius.  Apart from the QIB issue, private placement 144A investments are not listed in the investment guidelines of Sarasota County and, according to Florida Statute 218.415, "investments not listed in the investment policy are prohibited."

Exhibit A (Conner Report) at p. 16.  The testimony that Plaintiff is not a QIB under Rule 144A is, manifestly, a legal conclusion.  Similarly, the testimony that private placements are prohibited by virtue of F.S. § 218.415 is a legal conclusion.  Under the authority cited above, this testimony should be excluded.

Furthermore, the Court denied Plaintiff's motion for partial summary judgment with respect to the Altius Investment based on Plaintiff's contention that it was not a QIB.  In denying that motion, the Court held that Plaintiff had not established that it would not be treated as a QIB by the SEC.  (June 27, 2012 Order, p. 7)  Mr. Conner, however, has not offered and cannot offer an opinion as to how the SEC might rule on whether Plaintiff could be treated as a QIB under Rule 144A.  Thus, his conclusory statement, based solely on the face of Rule 144A, that Plaintiff is not a QIB has already been rejected by the Court. Moreover, Mr. Conner is not a lawyer and has no legal background or training generally and has no specific training or experience in securities law or securities regulation.  Thus, Mr. Conner has no expertise or experience that suggests that he is qualified to opine on the subject of how the SEC might rule with respect to whether Plaintiff could be treated as a QIB under Rule 144A.

In addition, the testimony should be excluded regardless of whether Plaintiff is a QIB under Rule 144A.  As the Court stated at footnote 1 of its June 27, 2012 Order on the parties' motions for partial summary judgment, Rule 144A applies only to sellers of securities.  Thus, it has no application to this case, as Plaintiff was a purchaser of securities.  Accordingly, Mr. Conner's testimony regarding Rule 144A also should be excluded because Rule 144A does not apply in these circumstances and, thus, such testimony would not be helpful to the jury.

*Boca Raton Cmty. Hosp., Inc. v. Tenet Heathcare Corp.*, 502 F. Supp. 2d 1237, 1248-50

(S.D. Fla. 2007) (excluding expert evidence when the opinions were based on a regulatory

scheme that was not applicable on the grounds that it would not be helpful to the jury and

would mislead the jury).

   In addition, Mr. Conner's report contains other opinions that constitute impermissible

legal conclusions.  For example, at page 24 of his report, Mr. Conner opines that the purchase

of "the Altius Investment was not compliant with the investment guidelines." Exhibit A

(Conner Report) at p. 24.  Similarly, at page 25 of his report, Mr. Conner opines:

> "The purchase of $40 million Lehman Brothers Notes  . . . violated [the
> investment] guidelines  . . .
>
> Consequently, Wachovia  . . . was negligent in performing its fiduciary
> duties to Sarasota."

*Id.* at p. 25.

   Again, these opinions constitute legal conclusions that go to the ultimate issue in the

case.  They improperly invade the province of the court and jury and, hence, must be

excluded.  *Montgomery*, 898 F.2d at 1541 (finding it was abuse of discretion for court to

admit expert testimony regarding scope of insurer's duty under policy, as it was "a legal

conclusion").

**F.     Mr. Conner Should Be Prohibited From Offering Testimony About the
        Credibility of Evidence and What the Evidence Demonstrates.**

   In several instances Mr. Conner offers his views as to the credibility of evidence.  For

example, at page 22 of his report, Mr. Conner states:

> Considering that the Altius Investment was marked by Wachovia, ***it is
> simply not credible to believe*** that Wachovia's good faith pricing effort
> suddenly and "conservatively" valued at 40 as of the end of January what

Wachovia had priced at 99.5 as of November month-end and 99 as of December 2007 month-end.

Given the opportunity to correct their error as of February 12th, and to admit that they never performed the due diligence required of them as a fiduciary, . . . Wachovia chose not to "fess up", but to instead further deceive Sarasota by suggesting that the payoff in 4 months that Wachovia had expected "seems unlikely now" and warrants a "conservative price of 40" by Wachovia's internal pricing.  (emphasis added).

*Id.* at p. 22.

Although Plaintiff's counsel may try to make arguments in closing to try to support these statements, there is no basis for allowing them to be offered into evidence under the guise of an expert opinion.  *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.").  These "opinions" by Mr. Conner go to the credibility of evidence and what the evidence in the case demonstrates.  They do nothing more than state what Plaintiff's lawyers could argue in closing and, thus, should be excluded.

**G.    Mr. Conner Should Be Prohibited From Offering Testimony That Wachovia's Conduct Violated Plaintiff's Internal Investment Policy.**

In addition to the Investment Guidelines that are part of the Agreement entered into between Plaintiff and Wachovia, Plaintiff was also required by Florida law to maintain its own written investment policy that, *inter alia*, states certain investment objectives and specifies certain types of investments that Plaintiff is permitted to make.  Under F.S. § 218.415, Plaintiff was required to adopt and comply with that investment policy and Plaintiff adopted the Revised County Guidelines ("County Guidelines") attached as Exhibit A to the Complaint as its investment policy.  Complaint at ¶¶ 14-16; F.S. § 218.415 ("Investment

activity by a unit of local government must be consistent with a written investment plan . . . .").

At several places in his report, Mr. Conner opines that Wachovia's conduct violated the County Guidelines.  *E.g.*, Exhibit A (Conner Report) at pp. 4, 9, 10, 24, 25.  Testimony to these opinions should be excluded at trial because it would mislead and be confusing to the jury and because it would be unfairly prejudicial to Wachovia.

Wachovia was under no legal obligation to comply with the County Guidelines.  It is undisputed that Wachovia never signed any contract that required it to comply with the County Guidelines.  Exhibits F-H, Exhibit I (Deposition Transcript of Jeff Kern) at 185:18-188:14; Exhibit J (Deposition Transcript of Peter Ramsden) at 145:7-10.  Indeed, prior to the Agreement between Wachovia and Plaintiff being signed, the parties expressly addressed this issue, and Wachovia expressly ***declined*** to sign a draft contract that contained language purporting to require Wachovia to represent that it was complying with F.S. § 218.415, which requires that all investments made by a local government in Florida comply with the local government's written investment policy.  Moreover, Wachovia specifically informed Plaintiff that it was Plaintiff's responsibility to insure that investments authorized under the Investment Guidelines that are part of the Agreement, complied with F.S. § 218.415.  As Mr. Murphy (of Wachovia) stated to Mr. Kern (of Plaintiff) in an e-mail dated July 12, 2004:

> As for the language referencing Florida Statute 218.415 that was originally proposed by Mr. Seabrook we unfortunately can't keep that as is.  Our problem is that by incorporating the Statute in our agreement the bank could be construed to be making a representation regarding compliance with that Statute.  Ultimately, ***that determination must be made by the County*** and it's [sic] advisors.

Exhibit K (July 12, 2004 E-mail) (emphasis added).

In response to this, the Plaintiff did not insist that Wachovia comply with the County Guidelines.  It did precisely what Wachovia suggested.  That is, Plaintiff proceeded to amend the County Guidelines so that it expressly authorized the types of investments that Wachovia was permitted to make under the Investment Guidelines that are part of the Agreement. Specifically, Plaintiff agreed to allow Wachovia to purchase corporate notes and asset-backed securities and proceeded to amend County Guidelines to expressly authorize Wachovia to purchase the corporate notes and asset-backed securities.  Exhibit L (April 14, 2005 E-mail).  Wachovia had previously informed Plaintiff that these types of investments would need to be made in the securities lending program in order to realize the revenue projections that Wachovia had provided.  Exhibit M (August 31, 2004 E-mail), Exhibit N (Securities Lending Investment Guidelines, redline version).  These included investments that involved more risk than what was originally contemplated by County Guidelines. Exhibit O (August 31, 2004 E-mail).

Given these undisputed facts, there is no legal basis for Plaintiff to contend that Wachovia was bound to comply with County Guidelines to which Wachovia was not a party, and to which Wachovia had expressly refused to be bound.  Hence, whether particular investments that Wachovia made in the securities lending program complied with the County Guidelines has no bearing on Plaintiff's claims.  Thus, Mr. Conner's testimony that investments that Wachovia made violated the County Guidelines, would confuse and mislead the jury and would be unfairly prejudicial to Wachovia.[2]

---

[2]     Contemporaneously with the filing of this Motion, Wachovia has also filed a Motion in Limine to Exclude Evidence Relating to Plaintiff's County Guidelines in which Wachovia
Continued on following page

### III.    CONCLUSION

Based on the foregoing, Defendants respectfully request an order *in limine* prohibiting Mr. Conner from offering the testimony described above.

### CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g), the parties have conferred and Plaintiff does not consent to the relief requested in this motion.

Dated:  July 17, 2012                    Respectfully submitted,

*/s/ Mary J. Hackett*
Mary J. Hackett
Jack B. Cobetto
K. Issac deVyver
REED SMITH LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
412.288.3131

*Attorneys for Wells Fargo Bank, N.A.*

---

Continued from previous page
seeks to preclude Plaintiff from referencing the County Guidelines or arguing that Wachovia breached the County Guidelines.  In that Motion, Wachovia provides a more complete analysis of the legal reasons that it was not bound by the County Guidelines.  Rather, than restate that analysis in full here, Wachovia incorporates those arguments herein.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of July 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.  I further certify that I mailed the foregoing to the following non-CM/ECF participants: None.

*/s/ Mary J. Hackett*
Attorney for Defendant